UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF ALABAMA

In re:

**FOREST OAKS, LLC,**                         Case No: 08-14955

    *Debtor*.                                            Chapter 11

## ORDER SUSTAINING SPCP GROUP LLC'S OBJECTION TO CONFIRMATION OF DEBTOR'S SECOND AMENDED PLAN OF REORGANIZATION

Robert M. Galloway, Attorney for Debtor
Jesse S. Vogtle, Jr., Attorney for SPCP Group, LLC

This matter is before the Court on SPCP Group, LLC's, Objection to Confirmation. The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Order of Reference of the District Court. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(I), and the Court has the authority to enter a final order. For the reasons indicated, the Objection to Confirmation is due to be SUSTAINED.

## FACTS

Debtor is a limited liability company created under Alabama law on December 12, 2005, for the purpose of operating the Forest Oaks Shopping Center in Pensacola, Florida. Debtor originally had three members: (1) Southeast Real Estate, (2) Forest Oaks ACG, LLC, and (3) Forest Oaks Investors, LLC. Debtor filed a voluntary petition for bankruptcy under Chapter 11 on December 11, 2008.

Prior to filing for bankruptcy, Debtor was managed by Southeast Real Estate, a corporation owned and operated by Chris White. Chris White also controlled the following entities: Bonner's Point Shopping Center, LLC ("Bonner's Point"); Callaway Plaza, LLC

1

("Callaway Plaza"); Deerfield Crossing, LLC ("Deerfield Crossing"); and MSC, LLC ("MSC"). In depositions before the trial, Chris White testified that the other entities he controlled made several loans to Debtor. Evidence in the form of copies of promissory notes was admitted at trial showing that Bonner's Point loaned Debtor $11,000.00; Crossroads loaned Debtor $15,000.00, $20,000.00 and $25,000.00; Deerfield loaned Debtor $200,000.00, $10,000.00, and $32,000.00; and MSC loaned Debtor $3,500.00. Each of the promissory notes was signed by Chris White as managing member of each LLC. In early 2009, Southeast Real Estate relinquished all interest in Debtor, leaving Joseph Brachfeld as managing member. At trial, Joseph Brachfeld, testified that the loans from the related party creditors (signed by Chris White) made to the Debtor (managed by Chris White) were not discovered by the other members of Forest Oaks, LLC, until after they were made.

On July 17, 2009, Debtor filed a Second Amended Plan of Reorganization which is the plan the Court is considering for confirmation. The Plan classified five classes of claims: (1) Administrative Claims, (2) Taxes and Priority Claims, (3) Secured Creditors, (4) General Unsecured Creditors, and (5) Related Party Creditors. The Plan proposed to pay Class 1, Administrative Claims, in full as soon as practical upon allowance of the claim by the Court. Class 2, Taxes and Priority Claims, were to be paid in full through 120 consecutive monthly installments beginning 30 days after the date of confirmation. Delinquent sales taxes were to be paid in 12 equal monthly installments beginning 30 days from the date of confirmation.

Class 3 consists of a single secured creditor, SPCP Group, LLC ("SPCP"). SPCP represents 96% of the creditor pool. The plan proposes to pay the secured debt of $3,500,000.00 in monthly installments of $23,088.43 at an interest rate of 6.25% per annum amortized over 25 years. Class 4, General Unsecured Creditors, are to be paid 100% of their claims without

interest through monthly payments over a period of 20 years beginning 5 years from the date of confirmation. Class 5 consists of the Related Party Creditors: Bonner's Point, Callaway Plaza, Crossroads Center, Deerfield Crossing, MSC, and Southeast Real Estate. The plan proposes to pay these creditors 70% of the debts due in monthly installments for a period of 20 years beginning 5 years from the date of confirmation.

Debtor filed a Report of Ballots on September 8, 2009. Balloting results were: Class 2, one ballot rejecting; Class 3, one ballot rejecting; Class 4, one ballot accepting and one ballot rejecting; and Class 5, six ballots accepting. On September 8, 2009, SPCP filed an Objection to Debtor's Second Amended Plan of Reorganization and filed a Supplemental Objection on October 15, 2009. The Objection and the Supplement raised many issues. On October 20, 2009, this Court held a hearing on confirmation of the plan of reorganization, and heard testimony and arguments presented by the parties.

At trial, the parties presented substantial evidence and testimony about the value of the Forrest Oaks property. John Beck, the current property manager, testified that the property is a C-type shopping center in a transitional area. Its major tenants include a nail salon, a Subway sandwich shop, a plasma donation center, a Dollar General store, a Rent-to-Own store, a finance company, and an Omni Fitness facility. Mr. Beck testified that the annual operating expenses total $312,000.00, including taxes, and estimated that $400,000.00 in capital improvements are needed. In addition to the testimony of Mr. Beck, several appraisals were submitted and considered by the Court. The Court finds, based on testimony and evidence, that the property in question is appropriately valued at $5,500,000.00.

Debtor also submitted three cash-flow analyses based on different estimates of the property's value. The second analysis is based on a model in which the property is valued at

3

Case 08-14955    Doc 158    Filed 12/02/09    Entered 12/02/09 09:22:33    Desc Main
Document    Page 3 of 7

$5,500,000.00. In it, the year one after-debt cash flow is $3,518.27 with an income-to-debt ratio is 1.066, and the year five after-debt cash flow is projected to be $101,149.35 with an income-to-debt ratio of 1.140.

## LAW

A court will confirm a proposed Chapter 11 reorganization plan if it meets all the requirements of 11 U.S.C. § 1129(a). Where a plan is not unanimously accepted by all of the impaired classes, a non-consensual plan may still be confirmed as long as it meets the other requirements of § 1129(a), "does not discriminate unfairly, and is fair and equitable" with respect to each class of claims or interests dissenting, and meets the requirements of § 1129(b) as to the dissenting class. *In re Henderson*, 341 B.R. 783, 788 (M.D. Fla. 2006), *quoting Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 LaSalle St. P'ship*, 526 U.S. 434, 441-42 (1999). The Debtor must prove its case by a preponderance of the evidence. *In re Briscoe Enterprises, Ltd., II*, 994 F.2d 1160, 1165 (5th Cir. 1993).

One of the objections raised by SPCP was as to the proper classification of claims by the Debtor. If the classes proposed by Forest Oaks are appropriate, the plan can be considered for confirmation. If Classes 4 and 5 must be one class, then SPCP's claim results in Classes 2, 3, and 4 voting to reject the plan. The class of Administrative Claims does not get to vote as it is unimpaired. If no impaired class has voted in the plan, it cannot be confirmed. 11 U.S.C. §§ 1129(a)(8) and (a)(10). Thus, the crucial preliminary issue is whether Class 5 can be considered to be a separate voting class.

Under Section 1122 of the Bankruptcy Code, "a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class." Dissimilar claims may not be classified together and similar claims may

4

be classified separately only if there is a legitimate reason. *In re Chatequgay Corp.*, 89 F.3d 942, 949 (2d Cir. 1996). "The main purpose of classification is to 'recognize a difference in rights of creditors which calls for a difference in treatment.'" *In re Porcelli, II*, 319 B.R. 8, 10 (M.D. Fla. 2004), *quoting In re Gillette Assocs., Ltd.,* 101 B.R. 866, 872 (Bankr. N.D. Ohio 1989). A plan cannot be confirmed where classification is designed to manipulate class voting. *Olympia & York Florida Equity Corp., v. Bank of New York*, 913 F.2d 873, 880 (11th Cir. 1990); *see also In re Austin Ocala Ltd.*, 152 B.R. 773, 775 (Bankr. M.D. Fla. 1993). "The proponent of the plan must demonstrate a justification for its classification scheme and that the classification is not motivated by the purpose of gerrymandering an affirmative vote of an impaired class." *In re Porcelli, II*, 319 B.R. 8, 10 (M.D. Fla. 2004), *quoting In re Holley Garden Apartments, Ltd*. 223 B.R. 822, 824-25 (Bankr. M.D. Fla. 1998). Generally, a class is impaired where the plan fails to restore the creditor to its pre-petition position. 11 U.S.C. § 1124.

SPCP alleges that the plan does not meet the requirements of having at least one class of impaired creditors accept the plan because Debtor gerrymandered the classes by distinguishing the Class 5 related party creditors in order to ensure one group of impaired creditors would accept the plan. Debtor argues that the rights of Class 5 related party creditors are distinct from the Class 4 creditors and warrant their own classification due to the ongoing nature of the relationship between the related parties and Debtor. This Court must determine whether Debtor has proved by a preponderance of the evidence that it has a legitimate business justification for classifying the related party creditors separately from the Class 4 general unsecured creditors.

Case law suggests that an ongoing business relationship, in and of itself, is not a sufficient reason to establish a separate class of creditors. Under similar facts in *Matter of Greystone*, 995 F.2d 1274, 1279 (5th Cir. 1991), a debtor argued that separate classification was

justified where the debtor needed to maintain good will for future operations with the specially classified creditors. The Fifth Circuit determined that such a plan was merely an attempt to enforce a cramdown and justification on the basis of a future relationship was insufficient because "it fails to distinguish between the *classification* of claims and the *treatment* of claims." *Id*. at 1280 (emphasis original). The claims of Class 4 and Class 5 share the same priority status and the same legal rights against the Debtor. Further, Chris White testified in his deposition that many of the related party creditors were no longer in operation. Where there is no LLC operating, there is no substance to the argument of supporting an ongoing business relationship.

Under the Bankruptcy Code, a plan cannot be confirmed unless it is: (1) approved by two-thirds in amount and more than one-half in number of each "impaired" class, or (2) at least one impaired class approves the plan, and the cramdown requirements of § 1129(b) are met. 11 U.S.C. §§ 1126(c), 1129(a)(8), 1129(a)(10). In the present case, Debtor has failed to establish a sufficient business justification for separately classifying the related party creditors, and therefore has improperly created at least one class of "impaired" claims that would vote in favor of the proposed plan of reorganization. Because the Debtor has failed to prove the validity of the classification scheme, it cannot meet the cramdown requirements, thus Debtor's plan cannot be confirmed.

If, however, the plan had properly classified all classes of claims, and if there had been enough votes in favor of the plan, the plan could have properly been confirmed because the plan was feasible. In determining feasibility, Debtor need only provide a reasonable assurance of commercial viability. *See, e.g., In re Repurchase Corp.*, 332 B.R. 336, 342 (Bankr. N.D. Ill. 2005). In the present case, Debtor provided evidence of projected cash flows after reorganization dependent upon the value placed on the Forest Oaks Shopping Center. This

6

Court has valued the Forest Oaks Shopping Center at $5,500,000.00, and the Debtor has provided evidence that there will be a positive cash flow at that level of valuation. The Court further heard testimony of Debtor's manager, Joseph Brachfeld, which reasonably assures the commercial viability of Forest Oaks by a preponderance of the evidence.

Despite a finding of feasibility, the Debtor's proposed plan cannot be confirmed due to the improper classification of the Class 4 and Class 5 creditors as separate. Therefore, SPCP's Objection to Confirmation is due to be SUSTAINED, and the Debtor's Second Amended Proposed Plan cannot be confirmed pursuant to 11 U.S.C. § 1129.

Dated: December 2, 2009

/s/ Margaret A. Mahoney
MARGARET A. MAHONEY
U.S. BANKRUPTCY JUDGE